# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

|  |  |  |
|---|---|---|
| **KENNETH A. BROOKS,** | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 2:21cv00010 |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **KILOLO KIJAKAZI,**[1] | ) | |
| **Acting Commissioner of** | ) | By: PAMELA MEADE SARGENT |
| **Social Security,** | ) | United States Magistrate Judge |
| Defendant | ) | |

*I. Background and Standard of Review*

Plaintiff, Kenneth A. Brooks, ("Brooks"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. § 1381 *et seq*. Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition. Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is, therefore, substituted for Andrew Saul as the defendant in this case.

consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Brooks protectively filed his application for SSI[2] on December 13, 2018, alleging disability as of June 1, 2018, based on back and

---

[2] On June 8, 2011, Brooks filed applications for disability insurance benefits, ("DIB"), and SSI, alleging disability as of May 31, 2011. (R. at 103.) By decision dated October 30, 2013, the ALJ denied Brooks's claims. (R. at 103-15.) Brooks appealed this decision to the Appeals Council. (R. at 168.) Again, on October 31, 2013, Brooks filed an application for DIB and supplemental security income, ("SSI"), alleging disability beginning October 31, 2013. (R. at 124.) By decision dated May 15, 2018, the ALJ denied Brooks's claim. (R. at 124-44.) After the ALJ issued his decision, Brooks pursued his administrative appeals, but the Appeals Council denied his request for review. Brooks then filed an action in this court seeking review of the ALJ's unfavorable decision. *See Brooks v. Saul*, Case No. 2:19cv00021. By order dated September 16, 2020, the court affirmed the final decision of the Commissioner denying Brooks's claims for DIB and SSI benefits.

Pursuant to the Fourth Circuit's opinion in *Albright v. Comm'r of Soc. Sec. Admin.,* 174 F.3d 473 (4th Cir. 1999), and in accordance with Social Security Acquiescence Ruling, ("AR"), 00-1(4), "[w]hen adjudicating a subsequent disability claim arising under the same…title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence" and consider its persuasiveness in light of all relevant facts and circumstances. A.R. 00-1(4), 65 Fed. Reg. 1936-01, at *1938, 2000 WL 17162 (Jan. 12, 2000). It is noted that, when *Albright* was decided, the agency "weighed" opinion evidence under different standards. *See* 56 Fed. Reg. 36932-01 at *36960, 1999 WL 142361 (Aug. 1, 1991). Those standards have been superseded by 20 C.F.R. § 416.920c, which prescribes how to consider persuasiveness of opinion evidence and prior administrative findings in claims made on or after March 27, 2017. Because this claim was made after March 27, 2017, the ALJ is required to consider prior ALJ decisions and Appeals Council findings under *Albright. See* Program Operations Manual System, ("POMS"), DI 24503.005, available at http://policy.ssa.gov/poms.nsf/lnx/0424503005 (effective Apr. 13, 2021) (explaining the categories of evidence).

The ALJ in this case noted he reviewed the previous 2013 and 2018 decisions. (R. at 22-23.) The ALJ noted the 2013 was "somewhat persuasive" as the objective record did not show a significant change in Brooks's health and functional ability. (R. at 22-23.) The ALJ also noted that the 2018 decision was "partially persuasive" as the objective record did not show a significant change in Brooks's physical health and functional ability. (R. at 23.) The ALJ noted the record did reflect mental health treatment; thus, the ALJ included limitations in the residual functional capacity that were supported by the objective record. (R. at 23.)

breathing problems, fatigue, depression, anxiety, shortness of breath and right knee pain. (Record, ("R."), at 11, 249-69, 290, 315, 324.) The claim was denied initially and on reconsideration. (R. at 186-88, 192-94, 198-200, 202-04.) Brooks requested a hearing before an administrative law judge, ("ALJ"). (R. at 205.) A hearing was held on June 2, 2020, at which Brooks was represented by counsel. (R. at 64-99.)

By decision dated August 3, 2020, the ALJ denied Brooks's claim. (R. at 11-27.) The ALJ found Brooks had not engaged in substantial gainful activity since December 13, 2018, the application date. (R. at 13.) The ALJ determined Brooks had severe impairments, namely, spine disorder/arthropathy of the lumbar facet joint; chronic respiratory disorder; depressive, bipolar and related disorders; and anxiety and obsessive-compulsive disorders, but he found Brooks did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13-14.)

The ALJ found Brooks had the residual functional capacity to perform simple, routine and repetitive light[3] work, except he could lift and carry items weighing 20 pounds occasionally and 10 pounds frequently; stand and walk up to four hours each in an eight-hour workday; sit for six hours in an eight-hour workday; push/pull as much as the lift/carry restrictions; occasionally climb, balance, stoop, kneel, crouch and crawl and work in dust, odors, fumes and pulmonary irritants and temperature extremes; and occasionally work at unprotected heights and around hazardous machinery. (R. at 17.) The ALJ found Brooks was unable to perform any past relevant work. (R. at 25.) Based on Brooks's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. § 416.967(b) (2021).

a significant number of jobs existed in the national economy that Brooks could perform, including the jobs of a cashier II, a ticket seller and an addressing clerk. (R. at 25-26, 92-93.) Thus, the ALJ concluded Brooks was not under a disability as defined by the Act and was not eligible for SSI benefits. (R. at 27.) *See* 20 C.F.R. § 416.920(g) (2021).

After the ALJ issued his decision, Brooks pursued his administrative appeals, (R. at 246, 366-67), but the Appeals Council denied his request for review.[4] (R. at 1-6.) Brooks then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2021). This case is before this court on Brooks's motion for summary judgment filed August 16, 2021, and the Commissioner's motion for summary judgment filed October 15, 2021.

## *II. Facts*

Brooks was born in 1976, (R. at 249), which classifies him as a "younger person" under 20 C.F.R. § 416.963(c). He has some college education and past work experience as a construction worker and carpenter. (R. at 78-79, 92, 291.) Brooks reported he worked in construction until he had a motor vehicle accident in 2011 and, just prior to that, he had a work accident where he caught someone's fall. (R. at 1419.) Brooks stated that, due to his feet going numb, he could only stand and walk up to 15 minutes without interruption, and he had difficulty balancing. (R. at 83.) He stated he had problems with his right knee "giving away" causing him to fall. (R. at 83-84.)

---

[4] The Appeals Council acknowledged receipt of additional medical evidence from Ballad Health dated August 20, 2020, through September 2, 2020. (R. at 1-2.) The Appeals Council stated this evidence did not relate to the period at issue; therefore, it did not affect the ALJ's August 3, 2020, decision. (R. at 2.)

In rendering his decision, the ALJ reviewed records from Jo McClain, Psy.D., a state agency psychologist; Stephen P. Saxby, Psy.D., a state agency psychologist; Dr. Jack Hutcheson, M.D., a state agency physician; Johnson City Medical Center; Wellmont Medical Associates; Appalachia Family Health; Lonesome Pine Hospital; Dr. Andrew J. Chapman, D.P.M., a podiatrist; Paige Billman, Psy.D., a licensed clinical psychologist; Frontier Health; and Ballad Health Medical Associates Spine and Rehabilitation, ("Spine and Rehabilitation"). Brooks's attorney submitted additional medical reports from Wellmont Medical Associates and Medical Associates: Neurosurgery and Spine, ("Neurosurgery and Spine"), to the Appeals Council.[5]

By way of background, Brooks began mental health treatment at Frontier Health in 2011 for anger management classes and he continued services through 2017 for his symptoms of depression, insomnia and chronic pain. (R. at 871.) He completed anger management classes and reported improvement with his children and the ability to better manage his symptoms. (R. at 871.) During group therapy, Brooks had an appropriate mood and affect, and he interacted satisfactorily with group members. (R. at 542, 545, 549.) During this time Brooks's mood was described as mildly depressed with a congruent affect, (R. at 481, 483, 488, 492, 498, 505-06, 509, 513, 519, 523, 529, 531, 535, 539), except on two occasions when his mood ranged from mildly to moderately depressed with a congruent affect. (R. at 456, 467.) In November 2013, James Kegley, a counselor at Frontier Health, diagnosed Brooks with major depressive disorder and impulse control disorder. (R. at 582.)

---

[5] Since the Appeals Council considered and incorporated this additional evidence into the record in reaching its decision, (R. at 1-6), this court must also take these new findings into account when determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991).

From 2013 through 2017, Brooks received treatment at Wellmont Medical Associates and was diagnosed with generalized anxiety disorder; depressive disorder; asthmatic bronchitis; chronic cough; arthropathy of lumbar facet joint, including spondylosis without myelopathy or radiculopathy and lumbosacral spondylosis; hypertension; skin lesion; lumbar radiculopathy; and steatosis of the liver. (R. at 1185-86.) In June 2017, chest x-rays showed no acute cardiopulmonary abnormalities and no significant radiographic changes of chronic obstructive pulmonary disorder, ("COPD"). (R. at 1304-05.) In November 2017, a pulmonary function test showed Brooks's forced vital capacity, ("FVC"),[6] was at 57 percent; and his forced expiration volume one second, ("$FEV_1$"),[7] was at 40 percent. (R. at 1292-93.) Brooks's effort was poor due to cough. (R. at 1293.) He had obstruction with no restriction and normal diffusion. (R. at 1293.)

From 2018 through 2020, Brooks continued treatment with various providers at Wellmont Medical Associates for complaints of back pain that radiated into his right lower extremity causing numbness, tingling and weakness; a cough; shortness of breath; styes; hypertension; nasal congestion; seasonal and environmental allergies; pulmonary emphysema; and plantar warts.[8] (R. at 1188-89, 1191, 1200, 1204, 1208, 1213, 1350, 1353, 1375-76, 1476, 1484, 1565, 1583, 1600.) During this

---

[6] FVC refers to forced vital capacity, or the total volume of air a patient is able to exhale for the total duration of the test during maximal effort. *See* aafp.org/afp/2014/0301/p359.html (last visited Aug. 4, 2022).

[7] $FEV_1$ refers to forced expiratory volume in one second, or the total volume of air a patient can exhale in the first second during maximal effort. *See* aafp.org/afp/2014/0301/p359.html (last visited Aug. 4, 2022).

[8] Brooks first complained of plantar warts on his left foot and Achilles' area on November 14, 2019. (R. at 1484.) On March 13, 2020, Swinney noted Brooks's plantar warts were still present, and he was referred to a podiatrist. (R. at 1565.) On May 21, 2020, Dr. Andrew J. Chapman, D.P.M., a podiatrist, performed debridement and topical cantharidin of six warts. (R. at 1593.)

time, he repeatedly denied nervousness and anxiety. (R. at 1202, 1206, 1210, 1354, 1376, 1487, 1562, 1568, 1586.) Brooks's examinations revealed he was fully oriented; he was active and cooperative; he had normal breath sounds with no wheezes; he had tenderness, bony tenderness and spasm in the lumbar back; he had tenderness and bony tenderness in the right shoulder;[9] straight leg raising tests were positive on the right; he had a normal gait; muscle strength in the lower extremities ranged from 4/5 to 5/5; he had normal muscle bulk and tone; bilateral reflexes were 2+; bilateral sinus tenderness; and he had normal mood, affect, behavior, judgment, thought content, cognition and memory. (R. at 1191, 1194-95, 1198, 1202, 1206, 1215, 1210-11, 1352, 1355, 1377, 1473, 1480, 1488, 1563, 1568-69, 1586-87, 1604-05.)

On January 10, 2018, Paige Billman, Psy.D., a licensed clinical psychologist, evaluated Brooks at the request of Brooks's attorney. (R. at 966-73.) Brooks reported problems with anxiety and depression since becoming unable to work following a motor vehicle accident in 2011. (R. at 972.) Billman noted these problems appeared to be secondary to chronic pain and financial stressors. (R. at 972.) She reported Brooks appeared to be in pain based on his facial expressions and frequent shifting in his chair; his affect was very blunted and suggestive of depressed mood; he did not appear overtly anxious; his insight and judgment were normal; he had no apparent memory problems; his speech was suggestive of linear and logical thought patterns. (R. at 966.) Billman noted the negative impression management scale on the Personality Assessment Inventory, Second Edition, ("PAI-II"), was somewhat

---

[9] In November 2015, x-rays of Brooks's right shoulder showed mild osteoarthritic change of the acromioclavicular, ("AC"), joint. (R. at 736.) Orthopedic evaluations in January and February 2016, indicated rotator cuff right shoulder tendinitis and physical therapy was ordered. (R. at 742, 744-45.) Records show Brooks had not sought recommended treatment as prescribed and physical therapy was declined by the insurance carrier. (R. at 784.) Brooks was advised to get Thera-Bands and do a home program. (R. at 784.)

elevated suggesting the possibility of symptom exaggeration. (R. at 966.) However, she further noted that Brooks tended to rate his symptoms as severe on all written measures and this was likely due to his then-current level of distress; thus, she concluded the report provided a valid picture of Brooks's overall functioning. (R. at 966.) The Beck Depression Inventory, Second Edition, ("BDI-II"), was administered and indicated severe depressive symptomology. (R. at 972.) The Burns Anxiety Inventory, ("BAI"), was administered and indicated extreme anxiety or panic. (R. at 972.) Billman diagnosed major depressive disorder, single episode, severe without psychotic features and generalized anxiety disorder. (R. at 972.)

That same day, Billman completed a mental assessment, finding Brooks had no limitations in his ability to follow work rules; to use judgment in public; to function independently; to understand, remember and carry out simple job instructions; and to maintain personal appearance. (R. at 974-76.) She found Brooks had mild limitations[10] in his ability to interact with supervisors and to understand, remember and carry out detailed job instructions. (R. at 974-75.) Billman opined Brooks had moderate limitations[11] in his ability to relate to co-workers; to deal with the public; to maintain attention and concentration; to understand, remember and carry out complex job instructions; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability. (R. at 974-75.) She found Brooks had substantial loss in his ability to deal with work stresses. (R. at 974.) Billman further found that Brooks would be absent from work more than two days a month. (R. at 976.)

---

[10] Mild means there is slight limitation, but the individual can generally function well. (R. at 974.)

[11] Moderate means more than a slight limitation, but the individual still is able to function satisfactorily. (R. at 974.)

On January 12, 2018, x-rays of Brooks's lumbar spine showed mild degenerative disc disease at the L4-L5 level, minimal first-degree spondylolisthesis at the L5-S1 level and mild bilateral sacroiliac arthritis. (R. at 1032.) That same day, chest x-rays showed no acute cardiopulmonary abnormalities. (R. at 1033.) Again, in August and October 2018, chest x-rays showed no acute cardiopulmonary abnormalities. (R. at 1034, 1270-71.) On October 11, 2018, an MRI of Brooks's lumbar spine showed suspect bilateral L5 spondylolysis and circumferential disc bulge and mild facet arthropathy at the L4-L5 level. (R. at 1022-23.)

On February 26, 2019, Jo McClain, Psy.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding Brooks had no limitations in his ability to understand, remember or apply information; to interact with others; to concentrate, persist or maintain pace; and to adapt or manage himself. (R. at 158-59.) She opined that, based on Brooks's normal mental status examinations, he did not suffer from a severe mental impairment. (R. at 159.)

On February 26, 2019, Dr. Jack Hutcheson, M.D., a state agency physician, found Brooks could lift and carry items weighing up to 20 pounds occasionally and up to 10 pounds frequently; sit and stand and/or walk up to six hours each in an eight-hour workday; push/pull as much as the lift/carry restrictions; frequently climb, balance, stoop, kneel, crouch and crawl; and he should avoid concentrated exposure to temperature extremes, fumes, odors, dusts, gases and poor ventilation. (R. at 160-62.) Dr. Hutcheson indicated no manipulative, visual or communicative limitations. (R. at 161.) On May 23, 2019, Dr. Robert McGuffin, M.D., a state agency physician, completed a medical assessment, which mirrored that of Dr. Hutcheson from February 26, 2019. (R. at 177-79.)

From March 2019 through September 2020, Brooks was treated at Spine and Rehabilitation for lumbar radiculitis. (R. at 40-49, 1439-43, 1446-50.) Brooks complained of chronic low back pain that radiated into his bilateral lower extremities to his feet. (R. at 1446.) He stated his feet went numb while sitting and improved when he stood. (R. at 1446.) On examination, Brook's pulmonary examination showed normal effort and no respiratory distress; his gait was normal; he had a normal mood, affect and behavior; he had tenderness in the lumbar back with limited range of motion; his muscle strength was 5/5 in his lower extremities; his straight leg raising tests were positive; and he had normal muscle bulk and tone. (R. at 47-48, 1442-43, 1449-50, 1604-05.) In August 2019, Brooks had tenderness in the lateral left hip and limited internal rotation and his straight leg raising tests were negative. (R. at 1435-36.) X-rays of Brooks's left hip showed mild osteoarthritis of the left hip and sacroiliac joint. (R. at 1495.) Epidural steroid injections were administered, and Brooks reported, excellent, but temporary improvement following the injections. (R. at 1432, 1443, 1450-51, 1497-1515, 1600.)

On March 22, 2019, Brooks presented to the emergency department at Lonesome Pine Hospital with complaints of back pain and tingling in his right leg. (R. at 1378.) He was ambulatory with some discomfort. (R. at 1378.) Brooks denied behavioral problems and confusion. (R. at 1379.) He was fully oriented and in no distress; his pulmonary examination showed normal effort and breath sounds with no wheezes; he had tenderness in his lower lumbar spine with mild straight leg raising at 80 degrees on the right side sitting; his legs were neurovascularly intact; he exhibited no edema; and he had a normal mood, affect and behavior. (R. at 1379-80.) Brooks was diagnosed with lumbar back pain. (R. at 1380.)

On May 22, 2019, Stephen P. Saxby, Psy.D., a state agency psychologist, completed a PRTF, finding Brooks had no limitations in his ability to understand,

remember or apply information and to adapt or manage himself and mild limitations in his ability to interact with others and to concentrate, persist or maintain pace; (R. at 175-76.) He opined that, based on Brooks's normal mental status examinations, he did not suffer from a severe mental impairment. (R. at 175.)

On August 16, 2019, Brooks saw Christy R. Swinney, a nurse practitioner with Wellmont Medical Associates, and reported he had to move a lot to alleviate back pain, which he described as moderate. (R. at 1476-77.) He stated that his legs go numb if he sits too long and, if he stands too long, he feels like he will fall. (R. at 1476.) Brooks reported moderate cough relief with treatment and his symptoms of depression were controlled with treatment. (R. at 1477.) Brooks had bilateral sinus tenderness; normal breath sounds; right shoulder and lumbar back tenderness and bony tenderness; 4/5 strength in the lower extremities; and 2+bilateral reflexes. (R. at 1480.)

That same day, Swinney completed a medical assessment, finding Brooks could occasionally lift and carry items weighing 10 pounds and 10 pounds frequently; he could stand and/or walk up to two hours in an eight-hour workday and could do so for 30 minutes without interruption; he could sit up to four hours in an eight-hour workday and could do so for one hour without interruption; he could occasionally kneel and balance and never climb, stoop, crouch or crawl; he had a limited ability to reach, to handle, to feel and to hear; he was restricted from working around heights, moving machinery, temperature extremes, chemicals, dust, fumes, humidity and vibration; and he would be absent from work more than two days a month. (R. at 1405-07.) On April 9, 2020, Swinney made the same assessment. (R. at 1579-81.)

On November 5, 2019, Brooks saw Crystal Burke, L.C.S.W., a licensed clinical social worker with Appalachia Family Health, and reported depression, difficulty concentrating and staying focused on tasks. (R. at 1419.) Brooks was clean, neat and casually dressed; his mood was depressed with a dysphoric affect; he had appropriate eye contact; he was fully oriented; his thought process was intact; he exhibited no paranoia or delusions; and his insight and judgment were good. (R. at 1421.) Burke diagnosed other symptoms and signs involving emotional state; major depressive disorder, single episode, severe without psychotic features; and anxiety disorder, unspecified. (R. at 1419-20.) On December 9, 2019, Burke reported Brooks continued to have symptoms of major depression and problems with anxiety. (R. at 1423.) Her examination findings remained unchanged except Brooks had slow thought process and fair judgment and insight. (R. at 1425.) Burke opined he was disabled from gainful employment. (R. at 1423.)

On December 27, 2019, Burke completed a mental assessment, finding Brooks had a satisfactory ability to follow work rules; to use judgment in public; to understand, remember and carry out simple job instructions; and to maintain personal appearance. (R. at 1409-11.) She opined Brooks had serious limitations, resulting in an unsatisfactory work performance, in his ability to relate to co-workers; to deal with the public; to interact with supervisors; to deal with work stresses; to function independently; to maintain attention and concentration; to understand, remember and carry out detailed and complex job instructions; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability. (R. at 1409-10.) Burke found that Brooks would be absent from work more than two days a month due to his impairments. (R. at 1411.)

On January 14, 2020, Burke reported Brooks continued to have symptoms of major depression and problems with anxiety. (R. at 1427.) Brooks reported he was

more irritable and easily agitated. (R. at 1427.) Burke reported Brooks was unshaven; his mood was depressed with a dysphoric affect; he had appropriate eye contact; he was fully oriented; his thought process was slowed; and he had fair judgment and insight. (R. at 1429.) Burke added insomnia to her diagnoses. (R. at 1428.)

On February 10, 2020, Brooks presented to the emergency department at Lonesome Pine Hospital for complaints of fever, neck pain and cough. (R. at 1492.) Brooks had normal range of motion; his pulmonary examination showed normal effort and breath sounds with no respiratory distress or wheezing; he was fully oriented; and his behavior was normal. (R. at 1493.) Brooks was diagnosed with acute maxillary sinusitis, recurrence not specified. (R. at 1494.)

On March 24, 2020, Burke reported Brooks continued to have symptoms of major depression and problems with anxiety in addition to chronic and acute pain issues. (R. at 1571.) Brooks reported he was more irritable, easily agitated, had difficulty concentrating and felt like he was "zoning out." (R. at 1571.) Brooks also stated he was financially stressed and had difficulty sleeping. (R. at 1571.) On May 12, 2020, Brooks saw Burke and reported he had increased pain and was unable to rest. (R. at 1575.) He stated he walked the floor to relieve the pain. (R. at 1575.) Brooks's examination findings remained unchanged, and Burke opined he was disabled from gainful employment. (R. at 1575.)

On May 21, 2020, Brooks saw Swinney and reported mid back pain after he slipped and fell while getting out of the bathtub. (R. at 1583.) He exhibited decreased range of motion, tenderness, bony tenderness, pain and spasm in his lumbar back. (R. at 1587.) That same day, x-rays of Brooks's lumbar spine showed a grade I spondylolisthesis/spondylolysis at the L5-S1 level with preserved lumbar lordosis;

and no loss of intervertebral disc space or vertebral body height. (R. at 1595.) On June 20, 2020, an MRI of Brooks's lumbar spine showed mild facet arthropathy and facet joint fluid at the L3-L4 level with moderate stenosis of both lateral recesses; mild to moderate disc degeneration at the L4-L5 level with mild disc bulge with facet arthropathy and moderate stenosis of both lateral recesses; and minimal central disc bulge at the L5-S1 level with facet arthropathy and mild stenosis of both lateral recesses. (R. at 1597-98.)

On August 20, 2020, Brooks saw Swinney and reported back pain, which he stated was worsened with prolonged standing and sitting. (R. at 52.) Brooks had a normal mood and flat affect; his speech was normal; his gait was normal and he walked without an assistive device, but he was slow to rise from a seated position and winced with pain when he tried to straighten up initially; he had normal active range of motion of all extremities; he had tenderness over the right-sided facet joints at the L5-S1 level with increased pain on extension/facet loading; he had normal muscle bulk and tone; and he had normal sensation. (R. at 57.)  Swinney diagnosed spondylolysis of the lumbar region; spondylolisthesis of the lumbar region; and chronic right-sided low back pain with right-sided sciatica. (R. at 58.) She recommended Brooks proceed with medial branch blocks. (R. at 58.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2021). *See also Heckler v. Campbell,* 461 U.S. 458, 460-62 (1983); *Hall v. Harris,* 658 F. 2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he

can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a)(4) (2021).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. § 1382c(a)(3)(A)-(B); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano,* 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers,* 131 F.3d 438, 439-40 (4th Cir. 1997).

Brooks argues the ALJ erred by improperly determining his residual functional capacity by rejecting the opinions of Billman, Swinney and Burke.

(Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-7.)

Because this matter involves a claim filed after March 27, 2017, a new regulatory framework applies to the ALJ's evaluation of medical opinions in the record. For applications filed on or after March 27, 2017, the Social Security Administration, ("SSA"), has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). Under the new regulations, ALJs no longer are required to assign an evidentiary weight to medical opinions or to accord special deference to treating source opinions. *See* 20 C.F.R. § 416.920c(a) (2021) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").[12]

Instead, an ALJ must consider and articulate how *persuasive* he finds all the medical opinions and all prior administrative medical findings in a claimant's case record based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the opinion. *See* 20 C.F.R. § 416.920c(b), (c)(1)-(5) (2021)

---

[12] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. § 416.913(a)(2) (2021). Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. § 416.913(a)(5) (2021).

(emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. § 416.920c(b)(1) (2021).

In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors," and, thus, the ALJ must address those two factors in evaluating the persuasiveness of medical opinions or prior administrative medical findings. 20 C.F.R. § 416.920c(b)(2) (2021).[13] In evaluating the supportability of a medical opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be." 20 C.F.R. § 416.920c(c)(1). In assessing the consistency factor, "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 416.920c(c)(2).

The new regulations also alter the way the ALJ discusses the medical opinions or findings in the text of the decision. *See* 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he considered each of them. Instead, when articulating his finding about whether an opinion is persuasive, the ALJ need only explain how he considered "the most important factors" of supportability and consistency. *See* 20 C.F.R. §

---

[13] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. § 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. § 416.920c(c)(2).

416.920c(b)(2). The ALJ may comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. *See* 20 C.F.R. § 416.920c(b)(2)-(3) (2021).

When the ALJ finds two or more opinions or findings about the same issue are both equally well-supported and consistent with the record, but are not exactly the same, the ALJ must consider the most persuasive factors, including the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5).

A claimant's residual functional capacity refers to the most the claimant can still do despite his limitations. *See* 20 C.F.R. § 416.945(a) (2021). The ALJ found Brooks had the residual functional capacity to perform simple, routine and repetitive light work, except he could lift and carry items weighing 20 pounds occasionally and 10 pounds frequently; stand and walk up to four hours each in an eight-hour workday; sit for six hours in an eight-hour workday; push/pull as much as the lift/carry restrictions; occasionally climb, balance, stoop, kneel, crouch and crawl and work in dust, odors, fumes and pulmonary irritants and temperature extremes; and occasionally work at unprotected heights and around hazardous machinery. (R. at 17.)

Brooks argues the ALJ erred by improperly determining his residual functional capacity by improperly rejecting the opinions of Billman, Swinney and Burke in that he did not adequately explain his weighing of these medical opinions. (Plaintiff's Brief at 5-7.) Based on my review of the record, I agree. As noted above, the new regulations require ALJs to explicitly discuss the supportability and

consistency of medical opinions. *See* 20 C.F.R. § 416.920c(b)(2) ("… we will explain how we considered the supportability and consistency factors for a medical source's medical opinions"). Not only must an ALJ consider the five factors set forth in the regulation, the ALJ must – at a minimum – explain his consideration of the supportability and consistency factors. *See Garrett v. Kijakazi*, 2022 WL 1651454, at *2 (W.D. N.C. May 23, 2022); *see also Dany Z. v. Saul*, 531 F. Supp. 3d 871, 883-84 (D. Vt. 2021) (explaining that failure to "explicitly discuss the supportability and consistency of medical opinions" can result in remand). Although the ALJ referenced Billman's January 2018 findings and opinion in the context of his decision, he did not specifically make a finding as to the persuasiveness and consistency of the findings and opinion. (R. at 24.)

In January 2018, Billman evaluated Brooks and diagnosed major depressive disorder, single episode, severe without psychotic features and generalized anxiety disorder. (R. at 972.) Billman administered the BDI-II and BAI assessments, which showed severe depressive symptomology and extreme anxiety or panic. (R. at 972.) She completed a mental assessment, finding Brooks had no useful ability to deal with work stresses and would be absent from work more than two days a month. (R. at 974, 976.) While the ALJ mentions Billman's findings in his decision, nowhere does he discuss consistency or supportability. (R. at 24.) The court also notes that Billman's findings and opinion were not considered in the ALJ's 2018 decision. (R. at 124-44.) Because the ALJ was required to articulate how he considered the consistency and supportability factors, he did not apply the correct legal standard in resolving Brooks's claim.

The ALJ found Burke's December 2019 assessment "not persuasive" because mental status examinations over the course of the relevant period and historical mental health records showed no acute mental status findings, conservative

treatment with prescribed medications and therapeutic counseling services. (R. at 24-25.) While the ALJ did not use the terms "consistency" or "supportability," it could be argued that this reasoning addresses those factors. Nonetheless, the ALJ did not address the consistency between Billman's and Burke's opinions. Burke diagnosed major depressive disorder, single episode, severe without psychotic features and anxiety disorder, unspecified. (R. at 1420.) She also opined Brooks had marked limitations in most occupational, performance and personal/social adjustments, including his ability to deal with work stresses. (R. at 1409-11.) This finding is consistent with Billman's finding that Brooks had no useful ability to deal with work stresses. *See* 20 C.F.R. § 416.920c(c)(2) (stating that the more consistent a medical opinion is with other medical sources, the more persuasive the medical opinion will be). Brooks began mental health treatment in 2011 for anger management, depression, insomnia and chronic pain. In 2013, Brooks's counselor diagnosed major depressive disorder and impulse control disorder. (R. at 582.) Brooks stated he did not handle stress "very well" and he did not handle changes in routine as well as he did before his accident. (R. at 310.) He also stated he had problems getting along with family, friends, neighbors and others because he was easily agitated due to pain and anxiety. (R. at 309.) When Brooks saw Burke, he reported he was more irritable and easily agitated with difficulty concentrating. (R. at 1427, 1571.)

The ALJ also found Swinney's assessments "less persuasive" as her own medical records did not support the severity indicated in her assessments. (R. at 24.) While this finding addresses supportability, it did not address consistency. Furthermore, the finding is simply in error. Swinney opined Brooks had a limited ability to reach, to handle, to feel and to hear. (R. at 1405-07, 1579-81.) In 2019, Swinney reported Brooks had tenderness and bony tenderness in the right shoulder. (R. at 1377, 1473, 1483, 1488.) In November 2015, x-rays of Brooks's right shoulder

showed mild osteoarthritic changes of the AC joint and orthopedic evaluations in January and February 2016 indicated rotator cuff right shoulder tendinitis. (R. at 736, 742, 745.) It is further noted the ALJ's 2013 decision reflects Brooks was limited to frequent pushing and pulling, bilaterally, and frequent feeling. (R. at 107.) The ALJ's 2018 decision reflects Brooks was limited to frequent reaching, including overhead reaching. (R. at 130.) As noted above, the ALJ found these opinions to be "somewhat and partially persuasive" as the objective record does not show a significant change in Brooks's health and functional ability. (R. at 22-23.) The ALJ further noted Brooks's previous shoulder impairment, but found the record failed to show that Brooks sought recommended treatment as prescribed. (R. at 23.) Regardless, throughout 2019, Brooks continued to exhibit tenderness and bony tenderness in the right shoulder. Brooks stated his right shoulder felt like "it's about to pop out of socket." (R. at 87.) He stated he took muscle relaxers for muscle spasms and cramps in his right shoulder. (R. at 87-88.) In addition, he stated he was unable to use his right arm overhead and he was unable to extend it in front of him for using it continuously. (R. at 88.)

Based on the ALJ's failure to fully explain his consideration of all the medical opinion evidence, I cannot find substantial evidence exists to support the ALJ's residual functional capacity finding, and I will recommend the court remand Brooks's claim to the Commissioner for further consideration.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist in the record to support the ALJ's consideration of the opinion evidence as to

Brooks's residual functional capacity; and

2. Substantial evidence does not exist in the record to support the Commissioner's finding that Brooks was not disabled under the Act and was not entitled to SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Brooks's and the Commissioner's motions for summary judgment, vacate the Commissioner's decision denying benefits and remand Brooks's claim to the Commissioner for further development.

## <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:    August 4, 2022.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE